UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | |
|---|---|
| DEBORAH HUIETT, | ) |
| | ) |
|     Petitioner, | ) |
| | )     Civil Action No. |
| v. | )     2:15-cv-125-JMH |
| | ) |
| JANET CONOVER, WARDEN, | )     **MEMORANDUM OPINION AND ORDER** |
| | ) |
|     Respondent. | ) |

\*\*\*

This matter is before the Court upon the Recommended Disposition filed by Magistrate Judge Hanly A. Ingram [DE 13] and Petitioner's Objections thereto [DE 14]. Having considered the matter *de novo* in light of those objections, the Court adopts Magistrate Judge Ingram's recommended disposition as its own.

Tina Rae Stevens was murdered in Kentucky in 1999. In April 2000, a roadside cleaning crew found most of her remains in a dark blue garment bag at the bottom of a hill. The initial target of the murder investigation was Thomas Jansen, Stevens's boyfriend at the time of her disappearance in May 2009. Investigators' suspicion then pivoted toward her former boyfriend, Leonard Day, and his girlfriend, petitioner Deborah Huiett. Day and Huiett faced separate jury trials and were convicted. The Commonwealth's theory was that Huiett stabbed Stevens in a fit of jealous rage, and that Day helped Huiett finish off the victim and dispose of her body. Day was tried first and convicted of Stevens's murder. Day

appealed as a matter of right to the Kentucky Supreme Court, which unanimously affirmed the judgment. *Day v. Commonwealth,* No. 2004-SC-000039-MR, 2006 WL 2707960 (Ky. Sept. 21, 2006). His conviction was the subject of a habeas corpus petition in this court in which relief was denied. *See Day v. Beckstrom*, No. 2:14-CV-75-KKC-HAI (E.D. KY April 11, 2016). The United States Court of Appeals denied his application for a Certificate of Appealability. *See Day v. Beckstrom*, No. 16-5610 (6th Cir. Feb. 9, 2017).

In Huiett's case, after a trial lasting several days, the jury convicted Petitioner on both counts and the state trial court sentenced Petitioner to life imprisonment as recommended by the jury. The Kentucky Supreme Court affirmed on direct appeal. *Huiett v. Commonwealth*, 2005-SC-000643-MR, 2007 WL 4793688 (Ky. June 21, 2007), *as modified Jan. 24, 2008*. The Kentucky Supreme Court addressed one claim which Petitioner has included in her habeas petition (Claim 5) regarding a comment co-defendant Leonard Day made to a witness. As mentioned above, Day was tried separately.

Petitioner filed a *pro se* motion to vacate the conviction under Ky.R.Crim.Proc. 11.42 before her direct appeal was final. The state trial court appointed counsel who filed a supplemental brief and asked for DNA testing. The trial court then held a two-day evidentiary hearing on the post-conviction motion before denying relief.

The Kentucky Court of Appeals affirmed the trial court's order in all respects except that it remanded the issue of DNA testing to the trial court. *Huiett v. Commonwealth*, No. 2012-CA-001824-MR, 2014 WL 1268695 (Ky.App. Mar. 28, 2014), *as modified Aug. 29, 2014 on denial of reh'g*. App. 427-450. DNA testing is still pending before the state trial court. The Kentucky Court of Appeals addressed four claims pending before this Court; a claim that the Commonwealth failed to produce exculpatory information before trial and three claims of ineffective assistance of counsel.

A state prisoner has a statutory right to collaterally attack her conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001). A state prisoner may seek federal habeas corpus relief on the ground that she is being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011). All of the state court's factual findings are presumed to be correct, and can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. , 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks omitted). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. , 132 S. Ct. 2148, 2155 (2012) (internal quotation marks omitted). In sum, "federal judges are required to afford state courts due respect by overturning their

decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Therefore, the question before this Court is not merely whether the Kentucky courts were incorrect, but whether they were so wrong that their treatment of the law and facts was "unreasonable" under these deferential standards.

Magistrate Judge Ingram correctly analyzed Petitioner's claims under AEDPA in a thorough and in-depth fashion and found them wanting. Although Petitioner has filed objections to his recommended disposition [DE 14], the Court wholly agrees with Magistrate Ingram's analysis upon de novo review of the same.

An ineffective-assistance-of-counsel claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an ineffective-assistance claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing

professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice under the second prong of Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id.* at 695. Courts may

approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697.

The Supreme Court has repeatedly commented on the interaction between AEDPA deference under § 2254(d) and *Strickland's* standards of review. For example, in *Harrington v. Richter*, the Court emphasized that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id*. at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id.*

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Huiett when it analyzed and denied her ineffective-assistance-of-counsel claims. Therefore, the Court must grant

full double-deference to the state court's decision under § 2254(d).

Magistrate Judge Ingram's exhaustive discussion of each of Petitioner's three ineffective assistance claims in light of the above standards is spot on.  Nothing more be said.

Huiett next argues she "was denied due process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution when the Commonwealth withheld exculpatory information regarding [Serrano] and McRae."

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

> Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the case would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The *Brady* standard is not met if the petitioner shows merely a reasonable possibility that the suppressed evidence might have produced a different outcome.

*Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012) (internal citations and quotation marks omitted). Thus, to assert a successful *Brady* claim, a habeas petitioner must show that: (1) the evidence was favorable to the petitioner, (2) it was suppressed by the government, and (3) the petitioner suffered

prejudice. *Id*. The suppression by the government may be willful or inadvertent. *Irick v. Bell*, 565 F.3d 315, 321 (6th Cir. 2009).

Huiett argues that the Court of Appeals' analysis "flies in the fac[e] of" *Banks v. Dretke*, 540 U.S. 668 (2004), and *United States v. Tavera*, 719 F.3d 705 (6th Cir. 2013), cases that stand for "the proposition that the Commonwealth and courts cannot impose a 'due diligence' rule on the defense." D.E. 12 at 3.

Magistrate Judge Ingram disagreed, noting that the instant case was not comparable to *Banks* or *Tavera*. As the Kentucky Court of Appeals found, the Commonwealth did not withhold information that Huiett's counsel could only have otherwise discovered by conducting her own investigation. Rather, the Sheriff's Office and the prosecutor delivered the discovery materials to the defense. Those materials listed Serrano and McRae as potential witnesses. The materials included a recording of Det. Kenner's phone call with Walker in which he states that the potential witnesses denied giving Day or Huiett the garment bag. Nothing suggests that the Commonwealth possessed any information about Serrano seeing Stevens "alive during the Commonwealth's time frame." That information only came to light during the post-conviction evidentiary hearing.

Moreover, trial counsel knew about Serrano and McRae. The defense investigator worked diligently to locate and contact these potential witnesses but failed to do so because they were

taking pains not to be found. The fact that defense counsel was diligently pursuing Serrano and McRae shows that their identities and potential value as witnesses were **not** suppressed by the government. The discovery materials provided by the Commonwealth gave defense counsel enough information about Serrano and McRae that counsel considered them, at least initially, worthy of tracking down.

For the above reasons the Court cannot disagree with Magistrate Judge Ingram's conclusion that the Kentucky court's cogent analysis and resolution of this issue was an unreasonable application of, or contrary to, *Brady*.

Under the Confrontation Clause, every criminal defendant has the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court in *Crawford* held that whenever "testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Otherwise, testimonial evidence is constitutionally inadmissible. *Davis v. Washington*, 547 U.S. 813, 821 (2006).

Huiett raised her Confrontation Clause claim in her direct appeal to the Kentucky Supreme Court. *See* D.E. 8-3 at 21-30. The issue concerns trial testimony by Day's former cellmate Rudy Lopez. Day himself did not testify at trial; he had invoked his

Fifth Amendment privilege against self-incrimination. *Huiett v. Commonwealth*, No. 2005-SC-000643-MR, 2007 WL 4793688, at *2 (Ky. June 21, 2007); D.E. 1 at 24. According to Huiett,

> Prior to Lopez being called to the stand, the trial court ordered a recess and held a bench conference to discuss the parameters of Lopez's testimony. The Commonwealth stated that, according to Lopez, Day had said something to the effect of, "[Huiett] cut her up but she didn't do shit right, so I had to finish her off." The Commonwealth proposed that Lopez be allowed to testify to the redacted statement "I finished her off." The court thought that the proposal went too far because the statement "I finished her off" implied a confederate. The judge also stated that, if the statement were allowed, it would "get us in some serious water."

However, during his testimony, Lopez testified that Day said "he had to finish her off." Defense counsel objected and requested a mistrial. *Id*. Another bench conference ensued, after which the trial court refused to grant a mistrial and declined to give a curative instruction. As the Kentucky Supreme Court explained regarding the post-testimony bench conference,

> on further reflection the judge denied [Huiett's] motion for a mistrial for the following specific reasons: 1) the statement did not mention [Huiett]; 2) the language could mean no more than what happens when a hunter shot a deer that had run off wounded; and 3) the jury did not have to read into the statement "any accusation towards [Huiett]." The prosecutor had warned the witness not to make the statement and no claim was made that it was improperly elicited. In the trial court's view the important distinction preventing a mistrial was that the statement did not refer to [Huiett]. With this in mind, the trial court feared that giving an admonition would "draw an inference that's not necessarily already there." No admonition

> was requested because the defense took the position that the testimony was incurable.
>
> What the trial court said before hearing the testimony and after hearing it did differ. However, the trial court's final view of the matter after hearing the testimony in context was better informed than when hearing only a proposed statement out of context. His view of the actual evidence has more weight than an anticipated statement. The strongest inference that could be drawn from the actual testimony is that some unnamed person may have injured the victim, left her to die, and that Day "had to finish her off." That inference certainly would not be sufficient to convict [Huiett], who was not mentioned in the statement. It in no way identified her as a confederate. In fact, the statement is equally consistent with Day himself having to finish what he started. The trial court did not err in denying the motion for mistrial. There is no reasonable possibility that this statement affected the verdict, and even if it were error, it would be harmless.

*Huiett*, 2007 WL 4793688, at *2-3.

The Kentucky Supreme Court did not cite any law related to the Confrontation Clause, even though Huiett argued the claim under that Clause (*see* D.E. 8-3 at 21). It appears the court determined that (1) there was no error, and (2) if there was an error, regardless of its nature, Lopez's errant testimony was harmless under the circumstances. *See* Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded.").

Under AEDPA review, this Court is not concerned with whether the state court cited the correct legal basis for finding no error. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court is not required to cite—or even be aware of—the "governing law"

established by the federal Supreme Court. *Id*. Instead, the question is whether the state court's ruling on this issue was inconsistent with clearly established federal law. *Id*. When the state court fails to cite the controlling legal precedents, "AEDPA's highly deferential standard requires that this court give the state-court decision 'the benefit of the doubt.'" *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

In light of the fact that Huiett briefed this issue in the state court as a Confrontation Clause claim, and applying "the benefit of the doubt," it appears the Kentucky Supreme Court held that the Confrontation Clause was not violated. *Slagle*, 457 F.3d at 514. That court's "result and reasoning are consistent with Supreme Court precedent." *Id*. Specifically, the state court's ruling was consistent with the Supreme Court's *Crawford* and *Davis* cases because the hearsay statement offered by Lopez was non-testimonial and therefore was not covered by the Confrontation Clause.

The Confrontation Clause applies only to testimonial hearsay. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 547 U.S. at 821. "Testimonial evidence" encompasses solemn declarations and affirmations "made

for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51.

> An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out- of-court statement.

*Id*.

The statement at issue is Day's statement—reported through Lopez—that Day "had to finish [Stevens] off." *See* D.E. 1 at 24. This statement was not testimonial under any of the definitions offered by the Court in *Crawford*. *See Crawford*, 541 U.S. at 51-52. When Day made the statement at issue, he was speaking to a cellmate. This was a classic "casual remark to an acquaintance," not a statement that Day "would reasonably expect to be used prosecutorially." *Id*. at 51. Nor was it, for example, "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 52. Because the hearsay statement was non-testimonial, its admission did not implicate the Confrontation Clause. The Kentucky Supreme Court was therefore not unreasonable in concluding that there had been no error.

Even if the testimony's admission was constitutional error, the error would be harmless. A Confrontation Clause error is not the type of "structural error" that requires automatic reversal.

*See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006). Instead, *on federal habeas review*, such an error is subject to analysis under the harmless error standard of *Brecht*. *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007). The *Brecht* standard will uphold a conviction unless the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Kentucky Supreme Court indicated that the "finish her off" line could not have had a substantial and injurious effect because it facially did not implicate Huiett in the murder. *Huiett*, 2007 WL 4793688, at *3. Huiett "was not mentioned in the statement," the court found. *Id*.

The statement "in no way identified her as a confederate. In fact, the statement is equally consistent with Day himself having to finish what he started." *Id*. There was therefore "no reasonable possibility that this statement affected the verdict, and even if it were error, it would be harmless." *Id*. This harmless error analysis was not erroneous.

Huiett argues that the Kentucky Supreme Court's harmless error analysis is "illogical" and unreasonable because the Commonwealth's theory throughout the trial was "that Day and Huiett committed this crime together." D.E. 12 at 9. The implication is that the jury surely would have assumed that Huiett was the one who started what Day claimed to "finish." Assuming this is true,

the state court's decision was not so off-base as to be unreasonable. The government's key evidence consisted of Huiett's "many incriminating statements and admissions made . . . to several witnesses." *Huiett*, 2007 WL 4793688, at *2. If the jury surmised that Huiett was the one who started what Day said he "finish[ed]," it likely did so based on these multiple admissions by Huiett rather than anything intrinsic to the statement itself.

The decision of the Kentucky Supreme Court on this issue was not contrary to or an unreasonable application of the United States Supreme Court's clearly established law on the Confrontation Clause. Because Day's hearsay statement reported by Lopez is non-testimonial, it does not implicate the Confrontation Clause. Even if it did, any error in admitting the statement would be harmless under the *Brecht* standard because the statement neither mentioned nor implicated Huiett. It was relatively unimportant to the government's case and was unlikely to have had a substantial effect on the jury's decision.

Huiett has not shown that the Kentucky courts were unreasonable in rejecting her claims under *Strickland*, *Brady*, and the Confrontation Clause.

Accordingly,

**IT IS ORDERED** that Huiett' petition for a writ of habeas corpus be, and the same hereby is, **DENIED.**

A Certificate of Appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In other words, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.

In this case, the well-reasoned opinions of the Kentucky courts are entitled to capacious deference under AEDPA. Reasonable jurists would not find that these courts rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Huiett's claims are insufficiently viable to deserve encouragement to proceed further.

This the 18th day of September, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge